**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BARBARA SCRUGGS, ) | |
|   ) | |
|   Plaintiff, ) | |
|   ) | |
| vs.   ) | Case No. CIV-06-0465-F |
|   ) | |
| EXXONMOBIL PENSION PLAN ) | |
| and EXXONMOBIL SAVINGS PLAN, ) | |
|   ) | |
|   Defendants. ) | |

## ORDER

"Defendants' Motion for Summary Judgment," filed July 6, 2007, is before the court. (Doc. no. 37.)[1] Plaintiff has responded, defendants have replied, and the motion is ready for determination.

This is an ERISA action filed by plaintiff Barbara Scruggs, disputing the determination of the plan administrator of the ExxonMobil employee benefits plans that Ms. Scruggs is not entitled to retirement benefits for the period of 1983 through 2004. *See*, 29 U.S.C. § 1132(a)(1)(B) (a civil action may be brought by a participant or beneficiary to recover benefits due under terms of the plan). Ms. Scruggs seeks damages and a declaration that she is a covered employee under the defendant plans. Defendants, ExxonMobil Pension Plan and ExxonMobil Savings Plan (the plans), have moved for summary judgment, citing the plan administrator's denial of benefits and the administrator's conclusion that Ms. Scruggs was excluded from coverage

---

[1]The complaint shows only one defendant, "ExxonMobil Pension and Savings Plan." However, the movants identify themselves, in the plural, as "the defendants," referring to the "ExxonMobil Pension Plan" and the "ExxonMobil Savings Plan." Movants further state that the reference in the complaint to the "ExxonMobil Pension and Savings Plan" is incorrect. Accordingly, the court hereby corrects the caption of this action to conform with defendants' identification of the correct defendant entities. From this point forward, the parties are directed to use the corrected caption in their filings.

because she was a "special agreement person," a category of individuals excluded by the terms of the plans. Defendants argue that under the applicable standard of review, the administrator's determinations must be upheld by this court.

The parties agree regarding the standard for this court's review of the plan administrator's decision. Because it is undisputed that the plans in question give the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an arbitrary and capricious standard of review applies to the plan administrator's actions. DeGrado v. Jefferson Pilot Financial Insurance Company, 451 F.3d 1161, 1176 (10th Cir. 2006). Where the insurer and the plan administrator operate under an inherent conflict of interest, as it is undisputed that they do here, the court undertakes a sliding scale analysis, where the degree of deference accorded the plan administrator is inversely related to the seriousness of the conflict. *Id*. In such circumstances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence. *Id*. The court then, in turn, is obligated to take a hard look at the evidence and arguments presented to the plan administrator, to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest. *Id*. In reviewing a plan administrator's decision under the arbitrary and capricious standard, the court is limited to the administrative record--the materials compiled by the administrator in the course of making its decision. *Id*. at 1169. In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision. *Id.* Because the matter comes before the court at this stage as a motion for summary judgment, the usual standards under Rule 56, Fed. R. Civ. P. also apply,

meaning that defendants must show that the administrator's decision is supported by substantial evidence, as a matter of law.

The following facts are undisputed. A letter from the plan administrator, dated January 19, 2005, states that Ms. Scruggs is not entitled to benefits during the subject period because, as a "special agreement person," Ms. Scruggs was excluded from coverage under Section 1.34, sub-parts (B) and (C), of the common provisions of the relevant plans. According to the administrator's denial letter, the plans define a "special agreement person" as an individual "working for a participating employer pursuant to an agreement between the participating employer and a non-affiliated organization that pays the person's salary or wages," (sub-part (B)); or, as a person "employed by a participating employer under a written agreement with the person that specifically excludes the person from coverage for benefits." (Sub-part (C)).[2] Based on the particulars of Ms. Scruggs' work history, the parties agree that there are three different employment periods in question. The plan administrator found that sub-part (B) excluded Ms. Scruggs from coverage for the first employment period running from January of 1983 through November of 1993; that sub-part (C) excluded Ms. Scruggs from coverage for the second employment period running from December of 1993 through January of 1999; and that sub-part (B) excluded Ms. Scruggs from coverage during the third employment period running from February of 1999 through 2004.

Given these findings by the plan administrator, the most critical issues are as follows. Under the sub-part (B) exclusion, it is critical for defendants to show substantial support in the administrative record for the following findings which are implicit in the administrator's denial letter: 1) that Ms. Scruggs worked for a

---

[2]There is also a sub-part (A), not material here.

participating employer, ExxonMobil, "pursuant to an agreement"; 2) that the agreement was between the participating employer ExxonMobil and "a non-affiliated organization"; and 3) that the non-affiliated organization "pays [or paid] [Ms. Scruggs] salary or wages." Under the (C) exclusion, it is critical for defendants to show substantial evidentiary support in the administrative record for the following findings which are implicit in the administrator's denial letter: 1) that Ms. Scruggs was a person employed by a participating employer, ExxonMobil, "under a written agreement" with Ms. Scruggs; and 2) that the written agreement with Ms. Scruggs "specifically exclude[d] [Ms. Scruggs] from coverage for benefits."

The motion for summary judgment sets out proposed undisputed material facts in 13 separately numbered paragraphs. Some of the proposed undisputed facts correctly recite what the plan administrator either needed to determine or did, in fact, find, and such proposed undisputed facts are admitted by the plaintiff on that basis. However, the proposed undisputed facts do not cite any places in the administrative record which provide evidentiary support for any of the most critical findings described above. Nor does the plan administrator's letter denying benefits cite to any places in the administrative record in support of these critical findings. For example, without referring to the administrative record, the plan administrator found that "[f]or the first and third periods referenced above wherein [Ms. Scruggs] performed services for ExxonMobil, Ms. Scruggs worked for ExxonMobil pursuant to agreements between ExxonMobil and two non-affiliated organizations that paid her wages." This statement, appearing, unsupported, in the manner that it does in the denial letter, is wholly conclusory.

Additionally, although there is an agreement in the administrative record between ExxonMobil and an entity referred to by the parties (without any further explanation) as JAICO, covering a portion of the time in question, there is nothing in

the record showing that Ms. Scruggs performed services for ExxonMobil pursuant to this particular Continuing Services Agreement. Ms. Scruggs disputes that she worked pursuant to this agreement, arguing, among other things, that she did not provide instrumentation and measurement services, the type of services covered under the agreement. Nor is there any citation in the denial of benefits, or in the motion, to any evidence in the administrative record which shows that JIACO is a non-affiliated entity, or that JIACO paid Ms. Scruggs' wages, yet these are criteria which must be met under the sub-part (B) exclusion.

Even if it were shown that Ms. Scruggs did work under the ExxonMobil-JIACO agreement from February of 1999 through 2004 (the third period of her employment during which the plan administrator found that she was employed by American Measurement Services assigned to ExxonMobil), such a showing would not address the absence of evidence regarding Ms. Scruggs' two prior work periods. As to the second of those two periods--and again, without any citations to the record--the plan administrator concludes that "Ms. Scruggs worked for ExxonMobil as an independent contractor." However, there are no independent contractor agreements in the administrative record (or attached to the motion). Nor is there anything in the administrative record to show that any independent contract agreement which might have existed expressly excluded Ms. Scruggs from coverage, as required by sub-part (C) for that exclusion to apply. The plan administrator's denial letter states that Ms. Scruggs was an independent contractor and that all independent contractors enter into a standard written agreement which specifically excludes the person from coverage. If that is true, the absence of such a written agreement in the record can only have the effect of undermining the plan administrator's denial, even under an indulgent standard of review (which, due to the conflict of interest, is not applicable here).

Even the common provisions of the plans themselves, which the administrator quotes as setting out the pertinent exclusions at § 1.34 sub-parts (B) and (C), are not, themselves, in the administrative record (except to the extent they are quoted in the denial letter).[3]

Although perhaps not required to do so for purposes of this motion, the court has attempted to make sense of the unauthenticated, unidentified, and un-indexed documents in the administrative record, in an effort to determine whether, despite the deficiencies of the motion or the benefits denial letter, there might be substantial support in the administrative record for the determination that Ms. Scruggs is a special agreements person and therefore not entitled to benefits. What appear to be phone notes taken during the investigation tend to support Ms. Scruggs' position. For example, phone notes at p. 24 of the administrative record, state: there is "no contract," there are "no records," and there is "no record of an independent contract." From defendants' viewpoint, the most that could be said about the state of the administrative record is that the evidence is conflicting.

In short, far from establishing that there is substantial evidence in the record to support the determination by the plan administrator, the court finds that defendants' motion essentially cites no evidence to support the administrator's most critical findings. Although beyond the purview of this order, the court notes that the plan administrator's denial of Ms. Scruggs' appeal also fails to cite any supporting

---

[3] The common provisions included as an exhibit to the motion appear to have been in effect *after* the period during which Ms. Scruggs claims she was employed and entitled to benefits. To correct this error, an earlier version of the plans' common provisions is attached to defendant's reply brief. Neither attachment, however, solves the problem created by the fact that the administrative record does not include a copy of the plans' common provisions which were invoked as the basis for denying benefits.

documentation in the administrative record and that the determinations stated in the letter are conclusory.[4]

Although defendants argue that Bronk v. Mountain States Tel. and Tel, Inc., 140 F.3d 1335 (10th Cir. 1998), and cases cited in Bronk, are dispositive, Bronk goes to the question of whether ERISA mandates inclusion of employees, leased or otherwise, whom the plans have permissibly excluded. Bronk confirms that ERISA allows a plan to distinguish between groups or categories of employees, providing benefits for some but not for others, so long as such distinctions may not be based upon age or length of service. *Id*. at 1338. The validity of the (B) and (C) exclusions are not the issue, however. The issue is whether defendants' motion establishes, as a matter of law, that there is substantial evidence in the administrative record to support the administrator's determination that during all of Ms. Scruggs' employment history, she fell within these exclusions. Defendants have fallen short of making that showing.

After careful consideration of the parties' submissions, the record, and the relevant authorities, the motion is **DENIED**.

Not later than 15 calendar days after the date of this order, plaintiff shall file a memorandum outlining (with citation of authorities, as appropriate) the course of proceedings plaintiff would propose for the purpose of bringing this case to a conclusion in this court. Defendants shall respond to plaintiff's memorandum not later than 15 days after the date of the filing of plaintiff's memorandum. The court

---

[4]*See*, DeGrado, 451 F.3d at 1175-76 (when a plan administrator fails to make adequate findings or to explain adequately the grounds of its decision, the proper remedy is to remand the case to the administrator for further findings or explanation).

will then enter an order with appropriate provisions for bringing this case to a conclusion in this court.

Dated this 4th day of September, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0465p019(pub).wpd