## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BARBARA SCRUGGS,        )
                                 )
     Plaintiff,           )
                                 )
vs.                         )     Case No. CIV-06-0465-F
                                 )
EXXONMOBIL PENSION PLAN and  )
EXXONMOBIL SAVINGS PLAN,    )
                               )
     Defendant.        )

## <u>ORDER</u>

Competing motions for summary judgment are before the court in this ERISA action in which plaintiff, Barbara Scruggs, seeks damages and a declaration that she is a covered employee under the defendant plans. Briefly stated, plaintiff contends that from 1983 to 2005 she worked as an employee of ExxonMobil and that she was entitled to, but denied, benefits under the plans. *See*, 29 U.S.C. § 1132(a)(1)(B) (a civil action may be brought by a participant or beneficiary to recover benefits due under terms of the plan). Defendants are the ExxonMobil Pension Plan and the ExxonMobil Savings Plan (the plans).

Plaintiff moves for summary judgment (doc. no. 64), asking the court to reverse the December 19, 2007 determination by the plan administrator which found that plaintiff is not entitled to benefits.[1] Plaintiff argues that she meets the definition of a common law employee, that she meets the definition of an employee as set forth in the

---

[1]A prior decision of the plan administrator also denied benefits. The court previously found, however, that the plan administrator had not made adequate findings to support his denial, and the court remanded the matter to the plan administrator for *de novo* consideration based on the existing administrative record supplemented by the plan documents. (Order, doc. no. 60.) The plan administrator issued his new letter denying benefits on December 19, 2007, found in the administrative record (AR) at 54-64, doc. no. 74, ex. 1.

plans, and that she was not a "special agreement person" as that term is defined in the plans. Defendants move for summary judgment (doc. no. 74) arguing that plaintiff's benefit claims are time-barred. Alternatively, defendants ask the court to affirm the plan administrator's denial of benefits. Both motions have been fully briefed and are ready for determination.

Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

These summary judgment standards govern defendants' limitations and laches arguments, arguments which were not before the plan administrator because they do not present eligibility issues, but rather, purely legal issues to be decided by the court. See, e.g. Marotta v. Road Carrier Local 707 Welfare Fund, 100 F.Supp.2d 149 (E.D. N.Y. 2000) (on cross-motions for summary judgment in § 1132(a)(1)(B) benefits case,

court addressed limitations argument under Rule 56 standards, finding the undisputed facts showed claims were time-barred as a matter of law; under the arbitrary and capricious standard, the court then separately reviewed the fund's decision to deny benefits and concluded that the decision should be upheld; for both of these reasons, defendant's motion for summary judgment was granted and plaintiff's motion for summary judgment was denied).

The other main issue presented by the parties' motions – whether the plan administrator's decision denying Ms. Scruggs' benefit claims should be affirmed or reversed – also comes before the court at the summary judgment stage, as is typical in these types of cases. As stated in Leahy v. Raytheon Company, 315 F.3d 11, 17-18 (1st Cir. 2002), "In an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary. No jury is involved."

The standard of review that applies to the court's consideration of the correctness of the plan administrator's denial of benefits was recently addressed by the United States Supreme Court in Metropolitan Life Insurance Co. v. Glenn, __ S. Ct. __, 2008 WL 2444796 (June 19, 2008) (hereafter: "Glenn"). As confirmed in that decision, a plan administrator's decision denying plan benefits challenged under §1132(a)(1)(B) is reviewed under a *de novo* standard *unless* the plan provides to the contrary. *See*, *id*. at *5 (applying trust principles to review of plan administrator's decision, following Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)). Where the plan provides to the contrary by giving the administrator discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate. *Id*. In this action, it is undisputed that the plan

instruments provide discretionary authority to the plan administrator to interpret the plan and to determine claims for benefits. Therefore, in this action, a deferential standard of review, rather than a *de novo* standard, applies to the court's review of the plan administrator's denial of benefits. *Id*.

Additionally, it appears undisputed in this action that the plan administrator making the eligibility decisions is an employee of the plans' sponsor, ExxonMobil. The court presumes for purposes of this order that such a dual role creates a conflict of interest. Glenn makes it clear that when an administrator operates under a conflict of interest, the conflict is one factor that must be taken into consideration when the court reviews the administrator's decision to determine whether there was an abuse of discretion. *Id*. at *5, 8. Here, defendants have offered evidence, in the form of an affidavit from the plan administrator, that although the plan administrator is an employee of ExxonMobil, no aspect of the administrator's performance appraisal has been influenced by whether he denies or grants claims under the plans, and that no aspect of his compensation has ever related to his decisions to grant or deny claims. Defendants have also identified evidence that plaintiff's claim would have negligible financial impact (or threatened financial impact) on the plans or on the employer. (For all of this evidence, see doc. no. 74, pp.18-19, and ex. 5.[2]) Plaintiff has not identified contrary evidence.

Additionally, no circumstances of the type considered by the Sixth Circuit (and approved by the United States Supreme Court) when the circuit set aside MetLife's

---

[2]Because the proper standard of review is a legal matter for the court to determine, it is appropriate to consider the affidavit for this limited purpose only, despite the fact that the affidavit is not a part of the administrative record. (The court also notes that the affidavit was not made the subject of any of defendants' proposed undisputed material facts, so that plaintiff has not been required to admit or dispute the facts it covers under the rules governing summary judgment briefing.) If this conclusion is incorrect, the court alternatively finds that even without consideration of the affidavit, the result would not change because there is no evidence to suggest any conflict of interest is especially significant here.

discretionary denial of benefits in <u>Glenn</u> exist here.  *See*, *id*. at *9 (noting with approval circuit court's focus on the fact that MetLife, which was both the administrator and  insurer of the plan, encouraged plaintiff Glenn to make certain arguments to the Social Security Administration which were financially advantageous to MetLife, that MetLife then ignored the agency's finding that Glenn could do no sedentary work, that MetLife weighted medical reports unevenly, and that MetLife failed to provide its experts with all of the relevant evidence).  Here, although some contractual documentation has not been located (see p. 14, *infra*), given the period of time involved, that fact is not suspicious.  There is no evidence suggesting that the plan administrator's dual role jeopardized his impartiality or that any financial considerations influenced the denial of benefits in this action.

For these reasons, considering all of the circumstances of this particular case, the court gives little significance to the conflict of interest here, although the court has carefully considered the conflict as one factor in its review of all relevant factors in determining whether the administrator's denial of benefits was an abuse of discretion.[3] *See*, <u>Glenn</u>, at *8-10 (the dual role of plan administrator, as administrator and party that determines whether benefits are payable and pays benefits out of its own pocket, creates a conflict of interest; reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and significance of the factor will depend upon the circumstances of the particular case).

---

[3]Given that this action has already been before the plan administrator and this court twice, the court makes the alternative finding that under any standard of review – whether applying some lessened deference standard, or even *de novo* review – the result would not change here.  As will be seen, the court's ultimate conclusions in this case are compelled, substantially if not entirely, by the uncontested (and inescapable) historic facts as to the history of plaintiff's relationship with ExxonMobil.  Issues (such as extent of disability within the meaning of an employer's  long-term disability plan) that would, by their nature, invite a skeptical look at a decision rendered by a conflicted plan administrator, are not present here.

Finally, the court notes that in reviewing the plan administrator's denial of benefits, the court is limited to consideration of the administrative record. <u>Fought v. UNUM</u>, 379 F.3d 997, 1003 (10th Cir. 2004); <u>DeGrado v. Jefferson Pilot Financial Insurance Company</u>, 451 F.3d 1161, 1169 (10th Cir. 2006).

<u>Limitations</u>

ERISA does not contain any statute of limitations for claims of benefit entitlement, therefore, an analogous state law statute must be borrowed. <u>Held v. Manufacturers Hanover Leasing Corp.</u>, 912 F.2d 1197, 1199-1200 (10th Cir. 1990). In this action the most analogous state statute is the one governing contract claims. <u>Id</u>. at 1207. In Oklahoma, the contract claims statute of limitations is 12 O.S. Supp. 2005 § 95(1), establishing a five-year limitations period. Accordingly, the parties and the court agree that a five-year limitations period applies to plaintiff's claims.

The parties' disagreement arises over the question of when the five-year limitations period to began to run, a question controlled by federal law. <u>Marotta</u>, 100 F.Supp.2d at 156 ("Although state law determines the limitations period, federal law governs the accrual date for a claim under ERISA," citation omitted). Plaintiff argues that her claims did not accrue until her application for benefits was denied. She argues that her application for benefits was denied, at the earliest, on September 1, 2005, when it is undisputed that the ExxonMobil Director of Human Resources/Retirement Services informed plaintiff that she was not eligible to participate in any ExxonMobil benefit plans, and provided an opportunity to appeal. (Doc. no. 74, undisputed material fact, UMF, ¶ 13.) On this basis, plaintiff argues that her claims are well within the five-year limitations period.

Defendants, on the other hand, argue that where a plaintiff who has arguably worked for years as an independent contractor seeks a judicial order requiring retroactive participation in a benefit plan, the courts consistently apply a different

accrual analysis.  In such circumstances, defendants argue that an ERISA claim accrues before formal denial, and even before a claim for benefits is filed, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary.

As reflected in the cases cited by defendants, the limitations period applicable to a claim that an individual was improperly classified or treated as an independent contractor begins to run when the prospective claimant first learns, or should have known, that she was considered an independent contractor not entitled to benefits.  As summarized in Brennan v. MetLife Ins. Co., 275 F.Supp.2d 406, 409 (S.D. N.Y. 2003), "all of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits."

For example, in Muller v. American Management Association International, 368 F. Supp. 2d 1166 (D. Kan. 2004), the court addressed the timeliness of plaintiffs' claims that they had been mischaracterized as independent contractors rather than as employees.  A five-year limitations period applied.  Id. at 1172.  Muller stated that in such a situation, a claim for benefits accrues upon a clear repudiation of plan benefits, so long as such repudiation is either known, or should have been known, to the plaintiffs and that this was so regardless of whether plaintiffs had filed formal applications for benefits.  Id., citing Carey v. International Brotherhood of Electrical Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999).  Thus, in Muller, the court held that the statute of limitations began to run at the time plaintiffs signed their independent contractor agreements.  Muller at 1173.  Among the cases cited in Muller was Schultz v. Texaco Inc., 127 F.Supp.2d 443, 448 (S.D.N.Y.2001), in which

the court held that "plaintiffs' claims accrued when [plaintiffs] were taken off defendants' payrolls because plaintiffs knew or should have known at that time that they were being reclassified as independent contractors and that their benefits were being repudiated." Muller, *supra* at 1173.

Not only do the cases *not* support plaintiff's contention that there must be a claim for benefits and a denial of benefits in order for a claim to accrue and the limitations period to begin to run, plaintiff's position defies common sense and the purpose of limitations protections. Plaintiff's proposed rule would allow a prospective claimant to sleep on her rights for her entire career – as defendants argue plaintiff did here for over 20 years; so long as the prospective plaintiff never sought benefits so that her claims were never denied, the limitations period would never begin to run on her benefit claims.

The court concludes that plaintiff's claims accrued, and that the five-year limitations period began to run, when plaintiff either actually knew or should have known that she was classified not as an employee of ExxonMobil but, rather, as an independent contractor not entitled to benefits. If undisputed evidence shows that date to be more than five years before plaintiff first claimed the ERISA benefits that are the subject of this action, then plaintiff's claims are barred and defendants are entitled to summary judgment on that basis.

In that regard, the court finds there is no genuine issue with respect to the following facts.

Under the plans, a "qualifying employee" is "any employee of a participating employer who is both a regular employee and a domestic-type employee," unless that person is a "Special-Agreement Person." (Doc. no. 74, defs' Undisputed Material Fact (UMF) ¶ 4.) A "Special-Agreement Person" means a "person . . . working for a participating employer pursuant to an agreement between the participating employer

and a non-affiliated organization that pays the person's salary or wages; or employed by a participating employer under a written agreement with the person that specifically excludes the person from coverage for benefits." (Doc. no. 74, defs' UMF ¶ 5.)

There are three work periods in question in this action: (1)1983 through 1993, (2) 1993 through 1999, and (3)1999 through 2003. During each of these periods plaintiff worked on a contract basis and she knew that she worked on a contract basis. During the first period, she contracted through Western Tank Truck and was paid by that entity. Also during the first period, in 1986, an attempt was made to persuade ExxonMobil to hire plaintiff as an employee, but ExxonMobil refused. During the second period plaintiff contracted directly with ExxonMobil. During this period she invoiced ExxonMobil directly for her services. During this period she prepared her own invoices and each year she received an IRS Form 1099 at year's end. During the third work period plaintiff contracted through JaiCo, with American Measurement Services being substituted for JaiCo in 2003. During all three work periods, plaintiff was never on the payroll of ExxonMobil, a fact of which she was aware. (For all of the above facts, see doc. no. 74, UMF, ¶¶ 6-11, and defs ex. nos. 2,3,4.[4])

By letter submitted on or about August 2, 2005, plaintiff first claimed entitlement to participate in the plans. (Doc. no. 74, defs' UMF ¶ 12.)

---

[4]Based on the briefing papers, the authenticity of defendant's exhibits 2,3 and 4 and the truth of the matters asserted in those documents, do not appear to be in dispute. These exhibits, however, are not the express subject of any of defendants' proposed undisputed material facts, so plaintiff has not been required to state whether she disputes them. Additionally, plaintiff contests their admissibility because they are not a part of the administrative record. The court considers these documents with respect to the limitations issue only, an issue which was not before the plan administrator and as to which the court is not limited to the administrative record. Nevertheless, the court finds that although these documents fortify the conclusion that plaintiff's claims are barred by limitations, these documents are not necessary to that conclusion.

Based on these undisputed facts, the court finds and concludes that plaintiff first claimed entitlement to participate retroactively in the ExxonMobil plans on August 2, 2005, more than five years after she knew or should have known that she was classified by ExxonMobil as a contract employee as to whom ExxonMobil repudiated any entitlement to the ERISA benefits. Accordingly, defendants have shown they are entitled to summary judgment in their favor because plaintiff's claims are barred by limitations.

Defendants also make a laches argument which the court need not, and does not, address.

<u>Review of Plan Administrator's Denial of Benefits</u>

Although the determination that this action is time-barred makes it unnecessary to review the plan administrator's denial of benefits, it is prudent to address this issue as an alternative ground for the court's ruling that defendants are entitled to summary judgment. Simply stated, plaintiff's motion urges the court to reverse the administrator's decision because it is arbitrary and capricious, while defendants' motion urges the court to uphold the plan administrator's decision because it is not arbitrary and capricious.

When the court remanded this action for *de novo* determination by the plan administrator, it did so by noting, among other things, that the plan administrator's denial letter failed to adequately cite supporting documentation from the administrative record for its most critical conclusions and that the administrator's determinations were largely conclusory. (Order, doc. no. 51, pp. 6-7.) The parties now return to this court with a decision by the plan administrator (AR 54-64) which carefully explains the administrator's analytical framework, which cites evidence from the administrative record in support of each finding, which includes the

administrator's reasoning, and which states, in detail, the basis for the plan administrator's denial of benefits.

The court has carefully reviewed the plan administrator's denial letter and the administrative record upon which it relies.  Having done so, the court finds that the denial letter makes several critical findings, each of which is well supported and well explained.

First, the administrator finds that plaintiff has not identified the type of detailed information which would be required in order to determine whether she meets (as she contends she does) the definition of employee under common law principles.  This is important because plaintiff's arguments to this court have focused on her theory that she is entitled to benefits because she is a common law employee.  Nationwide Mutual Insurance Company v. Darden, 503 U.S. 318 (1992), identifies factors relevant to this inquiry as including:  the skill required by plaintiff's work, the source of the instrumentalities and tools plaintiff used in that work, the location in which the work was performed, the duration of the relationship between the parties, whether the hiring party had the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work was a part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits, and the tax treatment of the hired party. *Id.* at 323-34.

Although plaintiff has identified some information in the administrative record bearing on some of these issues, the court agrees with the plan administrator that plaintiff has not identified the type of detailed information required to determine whether she was a common law employee. Nor has the court's review of the administrative record located the type of detailed information necessary to make this determination.

More importantly, it is well established that ERISA allows an employer to distinguish between groups or categories of employees, providing benefits for some but not others; in other words, an employer need not include in its pension plans all employees who meet the test of common law employees.  Bronk v. Mountain States Telephone and Telegraph Inc., 140 F.3d 1335, 1338 (10th Cir. 1998).  An employer may exclude from coverage, either by express definition or as a matter of reasonable interpretive discretion, even common law employees.  *See*, Bronk v. Mountain States Telephone and Telegraph, Inc. ("Bronk II"), 216 F.3d 1086, *7-8 (10th Cir. 2000) (noting that plaintiffs' reliance on Darden factors which arguably rendered them common law employees was misplaced, because even though plaintiffs may in fact qualify as "employees" under Darden, this does not mean they otherwise satisfy the plans' eligibility requirements; leased workers were excluded from benefit plans; leased workers were not classified as employees, were not on the employer's payroll, did not receive compensation directly from defendants, and were not "regular employees" of defendants for purposes of pension and welfare plans), unpublished decision cited here pursuant to the criteria of Tenth Circuit Rule 36.3.  Thus, in this action, it is appropriate that the plan administrator did not dwell on plaintiff's common law employee argument, but instead moved on to other issues which were dispositive of plaintiff's eligibility regardless of whether she qualified as a common law employee.

Second, the administrator found that plaintiff was not an employee within the meaning of the plans.  In support of this finding, the administrator relied on his long experience with ExxonMobil's benefit plans, including his knowledge of how contractors are paid through accounts payable on the basis of invoices submitted to the company rather than through the company payroll system; his knowledge of why only the payroll system provides the type of record-keeping capabilities necessary to

administer the type of benefits claimed by the plaintiff here, which he explains in detail; the intent of the plans to cover only payroll employees as shown by the fact that benefits communications were provided only to persons on the payroll; and the fact that during his 30-year career in human resources at ExxonMobil he was not aware of a case where a person hired as an independent contractor or an employee of a third-party providing services to the corporation, was provided with benefits under the plans. The administrator concluded that plaintiff was not eligible for benefits because she was not an employee within the meaning of that term as used in the plans.

Third, assuming for purposes of argument that plaintiff was otherwise entitled to benefits, the plan administrator found that plaintiff was excluded from coverage under the terms of the plans because she was a "special agreement person." This determination was the focus of the administrator's first denial of benefits. In his consideration of this issue this time around, the plan administrator carefully reported the record evidence, or lack of it, and his underlying findings with respect to each of the three work periods.

For example, with respect to plaintiff's first and third work periods, the plan administrator concluded that plaintiff came within the second "bulleted" clause of Section 1.7 of the relevant plans, defining a "Special-Agreement Person." (See plan language, which plan administrator found remained in effect through surviving plans, attached to plan administrator's determination as Exhibit C, at AR 146). The plan administrator concluded that an agreement had existed between ExxonMobil and Western Tank Trucks, for whom plaintiff worked during the first period. Although the contract was not located, the plan administrator relied on the recollection of the Exxon manager at the Hennessey facility where plaintiff worked. With respect to the contract between ExxonMobil and American Measurement Services, for whom plaintiff worked during the third period, the administrator cited the contract between

ExxonMobil and AMS (American Measurement Services, formerly JaiCo) in the record (at AR 27-42), and Exhibit A of that contract, which provides that a work order may be an oral request. In several instances the plan administrator relied on plaintiff's own statements, such as plaintiff's recollection that there was a "deal" with AMS. The administrator concluded that during the third period, a work order for plaintiff's services had been placed under this agreement.

The administrator further found that, in any event, "special agreement person" status did not require a written contract, and that given plaintiff's own references to her status during the three work periods, she demonstrated there were agreements with Western Tank Trucks and AMS. Based on his own knowledge, the plan administrator also found that Western Tank Trucks and AMS were not affiliated with Exxon. He also found that plaintiff was paid by Western Tank Trucks and AMS during the periods in question, citing the lack of any records showing that she was paid by Exxon or ExxonMobil, the lack of any mention of plaintiff in the corporation's human resources information system (other than a reference to her as a "contractor)", and citing plaintiff's own implicit acknowledgment that she was not paid through the corporate payroll system. Based on these and other facts, the administrator concluded that plaintiff was paid by Western Tank Trucks and AMS during the first and third work periods.

With respect to the second work period, the administrator found that plaintiff fell under the third "bulleted" clause of the "special agreement person" definition, because the Hennesey office where she worked was part of EUSA which was a division of Exxon Corporation, an employer as defined in the plan; because the Hennesey manager stated he was sure a contract was executed, and because plaintiff stated that during this period she contracted directly with Exxon. Based on the passage of time and the administrator's knowledge of compliance guidelines

-14-

regarding written contracts to support payments, as well as company audit procedures, he concluded that it was far more likely that there was a contract which cannot now be located than it is likely a contract never existed.  He also found it likely, based on his experience and knowledge regarding such contracts, that  plaintiff's contract excluded her from benefit plan participation.

Fourth, the plan administrator determined that even if plaintiff had been an employee for purposes of the plans, and that even if she had not been a "special agreement person" for any of the three work periods, she would not have accrued any benefits under the plans because she had no eligible compensation.  Citing the relevant provisions of the annuity plan, the thrift plan, and the savings plan, the plan administrator concluded that because plaintiff was not on the payroll and was a contractor, she had no compensation within the meaning of the plans, could not have accrued any pension, and could not have been entitled to any thrift plan contributions.

Fifth and finally, the administrator determined that eligible individuals could elect to contribute but that they were not automatically enrolled in any plans, and that plaintiff never authorized any withholding or attempted to do so.  Accordingly, he determined that plaintiff could have made no contributions as defined in the plans. Without such contributions, the plan administrator determined that plaintiff would not be entitled to any employer contributions.  The administrator cited the relevant plan provisions in support of these findings.

The administrator then summarized his conclusions, stating that plaintiff was not entitled to benefits because she was not an employee within the meaning of the plans, she was a special agreement person during each of the work periods in question, she did not receive any compensation within the meaning of the plans, and she never authorized any contributions to be deducted from her pay.  The administrator stated that any one of these reasons was sufficient grounds to deny the benefits now claimed

retroactively by Ms. Scruggs.  The plan administrator stated that, "Fundamentally, Ms. Scruggs' complaint is not with the administration of the Plans, but with the actions of the employer in not offering her a position on the payroll or establishing benefit plans to cover long-term contractors." (AR 63.)  The plan administrator concluded that plaintiff had not been wrongly denied any benefits under the plans.

In short, the court rejects plaintiff's argument that the plan administrator's denial of benefits is arbitrary or capricious.  It was not, and there was no abuse of discretion.  Under any arguably applicable standard of review, the administrator properly denied benefits.

## Conclusion

After careful consideration, the court determines that defendants are entitled to judgment as a matter of law, first, because defendants have carried their burden to show undisputed facts which establish that this action is barred by limitations, and second, because the administrator's denial of benefits was proper.  Accordingly, the plan administrator's December 19, 2007 denial of benefits to plaintiff Barbara Scruggs is **AFFIRMED**.  Defendants' motion for summary judgment is **GRANTED**, and plaintiff's motion for summary judgment is **DENIED**.

Dated this 30th day of June, 2008.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0465p031(pub).wpd

-16-